**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN MONTUE, | ) Case No.: 1:14-cv-01009-LJO-JLT |
|   Petitioner, | ) |
| v. | ) FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS (Doc. 12) |
| M. D. STAINER, | ) |
|   Respondent. | ) ORDER DIRECTING OBJECTIONS TO BE FILED WITHIN 21 DAYS |

Petitioner is a state prisoner proceeding in propria persona with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### **PROCEDURAL HISTORY**

The instant petition was filed on May 1, 2014.[1] On July 2, 2014, the Court ordered Respondent to file a response. (Doc. 5). On September 5, 2014, Respondent filed the instant motion to dismiss, arguing that the petition was untimely and that the claim did not state a cognizable federal habeas

---

[1] In Houston v. Lack, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the actual date of its receipt by the court clerk. Houston v. Lack, 487 U.S. 166, 276, 108 S.Ct. 2379, 2385 (1988). The rule is premised on the pro se prisoner's mailing of legal documents through the conduit of "prison authorities whom he cannot control and whose interests might be adverse to his." Miller v. Sumner, 921 F.2d 202, 203 (9th Cir. 1990); see Houston, 487 U.S. at 271. The Ninth Circuit has applied the "mailbox rule" to state and federal petitions in order to calculate the tolling provisions of the AEDPA. Saffold v. Neland, 250 F.3d 1262, 1268-1269 (9th Cir. 2000); Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003). The date the petition is signed may be considered the earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule. Jenkins v. Johnson, 330 F.3d 1146, 1149 n. 2 (9th Cir. 2003). Accordingly, for all of Petitioner's state petitions and for the instant federal petition, the Court will consider the date of signing of the petition (or the date of signing of the proof of service if no signature appears on the petition) as the earliest possible filing date and the operative date of filing under the mailbox rule for calculating the running of the statute of limitation. Petitioner signed the instant petition under penalty of perjury and indicated he had placed it in the prison mailing system on May 4, 2014. (Doc. 1, p. 15).

1

claim. (Doc. 13). On October 27, 2014, Petitioner filed his opposition. (Doc. 16). On November 6, 2014, Respondent filed a Reply to the opposition. (Doc. 17).

## DISCUSSION

A. Procedural Grounds for Motion to Dismiss

As mentioned, Respondent has filed a Motion to Dismiss the petition as being filed outside the one year limitations period prescribed by Title 28 U.S.C. § 2244(d)(1), and for failure to state a proper habeas claim. Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed Respondent's to file a Motion to Dismiss in lieu of an Answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a Respondent can file a Motion to Dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's Motion to Dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s one year limitation period and failure to state a cognizable habeas claim. Because Respondent's Motion to Dismiss is similar in procedural standing to a Motion to Dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal Answer, the Court will review Respondent's Motion to Dismiss pursuant to its authority under Rule 4.

B. Limitation Period For Filing Petition For Writ Of Habeas Corpus

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997). The instant

petition was filed on May 1, 2014, and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases, the limitation period begins running on the date the petitioner's review became final. Where, however, as here, the petitioner is challenging a prison disciplinary action, the Ninth Circuit has held that direct review is concluded and the statute of limitations commences when the final administrative appeal is denied. Redd v. McGrath, 343 F.3d 1077, 1079 (9th Cir. 2003)(holding that the Board of Prison Term's denial of an inmate's administrative appeal was the "factual predicate" of the inmate's claim that triggered the commencement of the limitations period); Shelby v. Bartlett, 391 F.3d 1061, 1066 (9th Cir. 2004)(holding that the statute of limitations does not begin to run until a petitioner's administrative appeal has been denied).

Here, the limitations period commenced on August 7, 2012, the day after Petitioner's third-level administrative appeal was canceled. Under 28 U.S.C. § 2244(d)(1)(D), Petitioner had one year from that date, i.e., , or until August 6, 2013, absent applicable tolling, within which to file his federal petition. As mentioned, Petitioner did not file the instant petition until May 1, 2014, almost ten months

after the limitation period had expired. Therefore, absent further tolling, the petition is untimely and must be dismissed.

C. Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Under the AEDPA, the statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). A properly filed application is one that complies with the applicable laws and rules governing filings, including the form of the application and time limitations. Artuz v. Bennett, 531 U.S. 4, 8, 121 S. Ct. 361 (2000). An application is pending during the time "a California petitioner completes a full round of [state] collateral review," so long as there is no unreasonable delay in the intervals between a lower court decision and the filing of a petition in a higher court. Delhomme v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003), abrogated on other grounds as recognized by Waldrip v. Hall, 548 F. 3d 729 (9th Cir. 2008) (per curium) (internal quotation marks and citations omitted); see Evans v. Chavis, 546 U.S. 189, 193-194, 126 S. Ct. 846 (2006); see Carey v. Saffold, 536 U.S. 214, 220, 222-226, 122 S. Ct. 2134 (2002); see also, Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

Nevertheless, there are circumstances and periods of time when no statutory tolling is allowed. For example, no statutory tolling is allowed for the period of time between finality of an appeal and the filing of an application for post-conviction or other collateral review in state court, because no state court application is "pending" during that time. Nino, 183 F.3d at 1006-1007; Raspberry v. Garcia, 448 F.3d 1150, 1153 n. 1 (9th Cir. 2006). Similarly, no statutory tolling is allowed for the period between finality of an appeal and the filing of a federal petition. Id. at 1007. In addition, the limitation period is not tolled during the time that a federal habeas petition is pending. Duncan v. Walker, 563 U.S. 167, 181-182, 121 S.Ct. 2120 (2001); see also, Fail v. Hubbard, 315 F. 3d 1059, 1060 (9th Cir. 2001)(as amended on December 16, 2002). Further, a petitioner is not entitled to statutory tolling where the limitation period has already run prior to filing a state habeas petition. Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Jiminez v. White, 276 F. 3d 478, 482 (9th Cir. 2001). Finally, a petitioner is not entitled to continuous tolling when the petitioner's later petition raises unrelated claims. See Gaston v. Palmer, 447 F.3d 1165, 1166 (9th Cir. 2006).

4

Here, the documents presented by Respondent in the motion to dismiss establish that Petitioner filed the following state habeas petitions: (1) petition filed in the Superior Court of Kings County on October 1, 2012, and denied on February 20, 2013 (Doc. 13, Exh. 1 & 2);[2] (2) petition filed in the California Court of Appeal, Fifth Appellate District ("5th DCA") on December 17, 2013, and denied on January 29, 2014 (Doc. 13, Exh. 3 & 4); and (3) petition filed in the California Supreme Court on February 21, 2014, and denied on April 23, 2014 (Doc. 13, Exh.5 & 6).

Respondent acknowledges that the statute of limitations was tolled during the pendency of the first petition, and for the duration of the period between the filing of the second petition and the denial of the third petition. However, Respondent contends that the 290-day delay between the denial of the first petition and the filing of the second petition deprives Petitioner of interval tolling for that period of time. The Court agrees.

In reviewing habeas petitions originating from California, the Ninth Circuit formerly employed a rule that where the California courts did not explicitly dismiss for lack of timeliness, the petition was presumed timely and was deemed "pending." In Evans v. Chavis, 549 U.S.189 (2006), the Supreme Court rejected this approach, requiring instead that the lower federal courts determine whether a state habeas petition was filed within a reasonable period of time. 549 U.S. at 198 ("That is to say, without using a merits determination as an 'absolute bellwether' (as to timeliness), the federal court must decide whether the filing of the request for state court appellate review (in state collateral review proceedings) was made within what California would consider a 'reasonable time.'"). However, "'[w]hen a post-conviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2).'" Bonner v. Carey, 425 F.3d 1145, 1148 (9th Cir. 2005)(quoting Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005)). See also Carey v. Saffold, 536 U.S. at 226.

Therefore, under the analysis mandated by the Supreme Court's decisions in Pace and Evans, this Court must first determine whether the state court denied Petitioner's habeas application(s) as untimely. If so, that is the end of the matter for purposes of statutory tolling because the petition was

---

[2] In computing the running of the statute of limitations, the day an order or judgment becomes final is excluded and time begins to run on the day after the judgment becomes final. See Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001) (Citing Rule 6 of the Federal Rules of Civil Procedure).

5

then never properly filed and Petitioner would not be entitled to a period of tolling under § 2242(d)(2), either for the pendency of the petition itself or for the interval between that petition and the denial of the previous petition. Bonner, 425 F.3d at 1148-1149.

However, if the state court did not expressly deny the habeas petition(s) as untimely, this Court is charged with the duty of independently determining whether Petitioner's request for state court collateral review were filed within what California would consider a "reasonable time." Evans, 546 U.S. at 198. If so, then the state petition was properly filed and Petitioner is entitled to interval tolling.[3]

In Evans, the Supreme Court found that a six-month delay was unreasonable. Id. The Supreme Court, recognizing that California did not have strict time deadlines for the filing of a habeas petition at the next appellate level, nevertheless indicated that most states provide for a shorter period of 30 to 60 days within which to timely file a petition at the next appellate level. Evans, 546 U.S. at 201. After Evans, however, it was left to the federal district courts in California to carry out the Supreme Court's mandate of determining, in appropriate cases, whether the petitioners' delays in filing state petitions were reasonable. Understandably, given the uncertain scope of California's "reasonable time" standard, the cases have not been entirely consistent. However, among the Ninth Circuit as well as the various federal district courts in California, a consensus has emerged that any delay of sixty days or less is per se reasonable, but that any delay "substantially" longer than sixty days is not reasonable. Compare Stewart v. Cate, 757 F.3d 929, 936 (9th Cir. 2012) (100-day delay unreasonable); Stancle v. Clay, 692 F.3d 948, 956 (9th Cir. 2012) (82-day delay unreasonable); Velasquez v. Kirkland, 639 F.3d 964, 968 (9th Cir. 2011) (delays of 81 and 91 days unreasonable); Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010) (delays of 115 and 101 days unreasonable); Banjo v. Ayers, 614 F.3d 964, 970 (9th Cir. 2010) (delay of 146 days unreasonable); Bennett v. Felker, 635 F. Supp. 2d 1122, 1126-1127 (C.D. Cal. 2009) (93 days unreasonable); Culver v. Director of Corrections, 450 F.Supp.2d 1135, 1140-1141 (C.D. Cal. 2006) (delays of 97 and 71 days unreasonable); Forrister v. Woodford, 2007 WL 809991, *2-3 (E.D. Cal. 2007) (88 day delay unreasonable); Hunt v. Felker, 2008 WL 364995 (E.D. Cal. 2008)

---

[3] Neither the Ninth Circuit nor the United States Supreme Court has addressed whether a delay in filing may deprive a petitioner of statutory tolling for the pendency of an otherwise properly filed state petition itself when the state court does not expressly indicate that the petition was untimely. Presently, Evans only affects entitlement to interval tolling.

1  (70 day delay unreasonable); Swain v. Small, 2009 WL 111573 (C.D.Cal. Jan. 12, 2009) (89 day delay
2  unreasonable); Livermore v. Watson, 556 F.Supp. 2d 1112, 1117 (E.D.Cal. 2008) (78 day delay
3  unreasonable; Bridges v. Runnels, 2007 WL 2695177 *2 (E.D.Cal. Sept. 11, 2007) (76 day delay
4  unreasonable), with Reddick v. Felker, 2008 WL 4754812 *3 (E.D.Cal. Oct. 29, 2008) (64 day delay
5  not "substantially" greater than sixty days); Payne v. Davis, 2008 WL 941969 *4 (N.D.Cal. Mar. 31,
6  2008 (63-day delay "well within the 'reasonable' delay of thirty to sixty days in Evans").

7       Here, without question, a delay of 290 days far exceeds the reasonable 60-day time period
8  established by federal courts in this circuit. Accordingly, Petitioner is not entitled to interval tolling
9  during the challenged period of time. That being the case, 345 days had elapsed when the statute
10 commenced to run again on April 24, 2014. At that point, Petitioner would have had 20 days within
11 which to file a timely petition, or until May 13, 2014. As indicated above, the Court, applying the
12 mailbox rule as it always does in such cases, concluded that the petition was filed on May 4, 2014, the
13 date Petitioner indicated in the form petition. Therefore, the petition is timely under the AEDPA.

14      In addition, Respondent argues that the petition should be deemed filed on June 25, 2014, the
15 date when the prison mail log for Petitioner indicates that the first mailing was sent to this Court from
16 Petitioner since before the earliest signing date in the petition. The Court disagrees.

17      First, the petition contains three different dates: (1) Petitioner signed the form petition under
18 penalty of perjury, and indicated he had placed the petition in the prison mail system on May 4, 2014
19 (Doc. 1, p. 15); (2) Petitioner also signed under penalty of perjury the printed brief in support of his
20 petition and dated it May 1, 2014 (Doc. 1, p. 25); and (3) the last page of the brief in support of the
21 petition contains a typed date of May 11, 2014, under which Petitioner also affixed his signature. (Doc.
22 1, p. 31).

23      The latter date is of no consequence since it was not signed under penalty of perjury, contains
24 no reference to when the petition was placed in the prison mailing system, and was typed, not printed,
25 and thus could simply be a typographical error. Of the remaining two dates, May 4, 2014 is the most
26 reliable, since it is signed under penalty of perjury and indicates placement of the petition in the prison
27 mail system. Also, it impossible that Petitioner placed the petition in the prison mail system on May 1,
28 2014, and yet still signed it under penalty of perjury on May 4, 2014. Therefore, May 4, 2014, appears

7

1  to be the date that would trigger the mailbox rule. Such a view is consistent with the way this Court
2  always construes the evidence in the petition pursuant to the mailbox rule.
3        Respondent's contends, however, that the Court should disregard the May 4, 2014 date and
4  weigh the evidence in the record, including Petitioner's prison mail log, and conclude that June 25,
5  2014 is the operative filing date.  Several flaws exist with Respondent's reasoning.  First, the mail log
6  establishes only that a piece of Petitioner's mail was sent to this Court on June 25, 2014.  There is no
7  evidence exactly what that piece of mail was or, even whether it relates to this habeas action.  Though a
8  reasonable assumption may be that it was the petition, in light of the fact that the instant petition was
9  docketed by this Court's clerk two days later, there is no evidence to support this assumption.
10 Moreover, as mentioned, the mail log establishes only when an item was <u>mailed</u> to this Court, not when
11 it was <u>received</u> by prison authorities or how long it might have been in the official's possession before
12 it was actually mailed.
13       Presumably, this is precisely why the mailbox rule was crafted, i.e., to provide some kind of
14 certainty as to when an item can be deemed "filed" when no other reliable evidence is available.  To be
15 sure, the mailbox rule is a legal fiction that requires the Court to assume that the date of signing is the
16 date it was delivered to the prison staff despite the fact that there is no certainty that this is the case.
17 Respondent would have the Court simply ignore the mailbox rule and substitute instead an evidentiary
18 inquiry that is predicated upon insufficient evidence to reach the factual finding Respondent urges.
19       The Court declines to do so and will apply the mailbox rule as it generally is applied, i.e., using
20 the date the petitioner signed the petition under penalty of perjury.  That date is May 4, 2014.  Using
21 that date, even Respondent's analysis would show that the petition is timely.
22       D.  <u>Failure to State A Cognizable Habeas Claim</u>.
23       Respondent, however, also contends that the petition, even if timely, fails to state a cognizable
24 federal habeas claim and therefore must be dismissed.  The Court agrees.
25       Respondent contends that the fact that Petitioner was sanctioned with thirty days' loss of credits
26 as a result of his conviction in the prison disciplinary hearing, is insufficient to invoke this Court's
27 habeas jurisdiction because the loss of credits, in Petitioner's case, does not impact the fact or duration
28 of Petitioner's confinement.  (Doc. 13, pp. 4-6).  Petitioner responds that, at his 2013 parole suitability

hearing, the Board of Parole Hearings ("BPH") singled out his prison disciplinary conviction as a basis for denying parole. The Court agrees with Respondent.

A federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution . . . ." 28 U.S.C. § 2254(a). A habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement. Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991), *quoting*, Preiser v. Rodriguez, 411 U.S. 475, 485, 93 S. Ct. 1827 (1973); Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003) ("[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence."); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases. Indeed, claims challenging the validity of a prisoner's continued incarceration, including the fact or length of the custody, lie within the "heart of habeas corpus" and are cognizable only in federal habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 498-99, 499 n.14 (1973). In contrast, an action pursuant to 42 U.S.C. § 1983 is appropriate for a state prisoner challenging the conditions of prison life but not the fact or length of the custody. McCarthy v. Bronson, 500 U.S. 136, 141-42 (1991); Preiser, 411 U.S. at 499; Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991).

With respect to prison disciplinary proceedings, it is established that a constitutional claim concerning the application of rules administered by a prison or penal administrator that challenges the duration of a sentence is a cognizable claim of being in custody in violation of the Constitution pursuant to 28 U.S.C. § 2254. See, e.g., Superintendent v. Hill, 472 U.S. 445, 454 (1985) (determining a procedural due process claim concerning loss of time credits resulting from disciplinary procedures and findings). The Supreme Court held that challenges to prison disciplinary adjudications that have resulted in a loss of time credits must be raised in a federal habeas corpus action and not in a § 1983 action because such a challenge is to the very fact or duration of physical imprisonment, and the relief sought is a determination of entitlement of immediate or speedier release. Preiser, 411 U.S. 475, 500.

The Supreme Court's decisions concerning any boundaries between habeas jurisdiction and § 1983 jurisdiction have been rendered in cases involving § 1983 proceedings. It is established that, regardless of the precise relief sought, an action pursuant to § 1983 concerning prison administrative processes is barred if success in the action would necessarily demonstrate the invalidity of the

1  confinement or its duration, or necessarily imply the invalidity of a conviction or sentence. Wilkinson
2  v. Dotson, 544 U.S. 74, 81-82 (2005) (parole processes). However, the limits on habeas jurisdiction, or
3  the appropriate extent of any overlap between habeas and § 1983, have not been definitively addressed
4  by the Supreme Court. The Supreme Court adverted to the possibility of habeas as a potential
5  alternative remedy to an action under § 1983 for unspecified additional and unconstitutional restraints
6  during lawful custody, Preiser, 411 U.S. at 499-500, but it declined to address whether a writ of habeas
7  corpus may be used to challenge conditions of confinement as distinct from the fact or length of
8  confinement itself. See, Bell v. Wolfish, 441 U.S. 520, 527 n.6 (1979).

9        Nevertheless, the Court continues to recognize a "core" of habeas corpus that refers to suits
10 where success would inevitably affect the legality or duration of confinement. For example, in
11 Wilkinson, the Court noted that if success on a claim would mean at most a new opportunity for review
12 of parole eligibility, or a new parole hearing at which authorities could discretionarily decline to
13 shorten a prison term, then success would not inevitably lead to release, and the suit would not lie at the
14 core of habeas corpus. Wilkinson, 544 U.S. at 82.

15       In the singular context of parole, cases in this circuit have recognized a possibility of habeas
16 jurisdiction in suits that do not fall within the core of habeas corpus. Bostic v. Carlson, 884 F.3d 1267
17 (9th Cir. 1989) (expungement of disciplinary finding likely to accelerate eligibility for parole)[4]; Docken
18 v. Chase, 393 F.3d 1024 (9th Cir. 2004) (a claim challenging the constitutionality of the frequency of
19 parole reviews, where the prisoner was seeking only equitable relief, was held sufficiently related to the
20 duration of confinement). However, relief pursuant to § 1983 remains an appropriate remedy for
21 claims concerning administrative decisions made in prison where success would not necessarily imply
22 the validity of continuing confinement. Docken v. Chase, 393 F.3d at 1030 (characterizing Neal v.
23 Shimoda, 131 F.3d 818 (9th Cir. 1997) (holding that a § 1983 suit is an appropriate remedy for
24 challenges to conditions which do not necessarily imply the invalidity of continuing confinement).

25       Nevertheless, it is established in this circuit that where a successful challenge to a disciplinary
26 hearing or administrative sanction *will not necessarily* shorten the overall length of confinement, then
27 habeas jurisdiction is lacking. In Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003), a prisoner sought
28

---

[4] The Court notes that Bostic involved a suit pursuant to 28 U.S.C. § 2241, not § 2254.

relief pursuant to § 1983 for allegedly unconstitutional disciplinary proceedings that resulted in administrative segregation. It was held that § 1983 was the appropriate remedy because the alleged constitutional errors did not affect the overall length of the prisoner's confinement; success in the § 1983 action would not necessarily result in an earlier release from incarceration, and the § 1983 suit did not intrude upon the core or "heart" of habeas jurisdiction. Ramirez, 334 F.3d at 852, 858.

The court in Ramirez went further and considered the related question of the extent of habeas corpus jurisdiction, expressly stating that its holding "also clarifies our prior decisions addressing the availability of habeas corpus to challenge the conditions of imprisonment." 334 F.3d at 858. The court reviewed the decisions in Bostic v. Carlson and Neal v. Shimoda and concluded as follows:

> Our decision in Neal v. Shimoda, 131 F.3d 818 (9th Cir.1997), illustrates the importance of measuring the likelihood that a suit under § 1983 will affect the length of the prisoner's confinement. In Neal, two state prisoners filed suits under § 1983 alleging that they were classified as sex offenders in violation of the Due Process and Ex Post Facto guarantees. Id. at 822-23. Among other harms, both inmates argued that the classification affected their eligibility for parole. Id. We held that Heck did not require the inmates to invalidate their classification before bringing suit under § 1983, because a favorable judgment "will in no way guarantee parole or necessarily shorten their prison sentences by a single day." Id. at 824. The prisoner suits did not seek to overturn a disciplinary decision that increased their period of incarceration. Rather, a successful § 1983 action would provide only "a ticket to get in the door of the parole board." Id. A favorable judgment, therefore, would not "undermine the validity of their convictions," or alter the calculus for their possible parole. Id.
>
> Neal makes clear that under Preiser habeas jurisdiction is proper where a challenge to prison conditions would, if successful, necessarily accelerate the prisoner's release. Thus, Neal accords with our holding here that habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence.

Ramirez, 334 F.3d at 858-59.

Thus, habeas jurisdiction might be predicated on some "conditions" claims affecting parole if there is a sufficient nexus to the length of imprisonment or a sufficient likelihood of affecting the overall length of a prisoner's confinement. Docken v. Chase, 393 F.3d at 1030-31. However, the appellate court has emphasized that measurement of the likelihood will result in an absence of habeas jurisdiction where the challenge will not necessarily shorten the overall sentence. Ramirez, 334 F.3d at 859. In Ramirez, expungement of the disciplinary action was not shown to be likely to accelerate eligibility for parole; rather, success there would have meant only an opportunity to seek parole from a board that could deny parole on any ground already available to it. Thus, the suit did not threaten to

advance the parole date.  Id. at 859.

A liberty interest arises under state law when an inmate is subjected to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995).  The mere possibility, however, of a denial of parole at some later, yet undetermined, time, where one of the considerations for parole is a potentially improper disciplinary finding, does not amount to the denial of a liberty interest.  In Sandin, the U.S. Supreme Court concluded that a *possible* loss of credits due to a disciplinary conviction was insufficient to give rise to a liberty interest where "[n]othing in [the State's] code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, even though misconduct is by regulation a relevant consideration."  Sandin, 515 U.S. at 487.  The Court went on to note that "[t]he decision to release a prisoner rests on a myriad of considerations," and an inmate is generally "afforded procedural protection at this parole hearing in order to explain the circumstances behind his misconduct record."  Id. at 487.  The Court held that "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause."  Id.

After Sandin, in order to demonstrate a liberty interest, an inmate must show a disciplinary conviction will inevitably lengthen the duration of the inmate's incarceration.  Id.  Sandin is directly on point with Petitioner's case and controls the result.  Since Petitioner has failed to establish that an erroneous disciplinary finding and sanction of credits will "inevitably lengthen the duration" of his incarceration, there is no due process interest at issue and thus no basis for this Court to assert its habeas jurisdiction.

As Respondent correctly observes, the BPH is required by California law to consider a wide range of factors in assessing whether an individual inmate is suitable for parole; indeed, the BPH may consider factors as wide-ranging as the original crime, an inmate's criminal and social history, his conduct in prison, any psychological evaluations, Petitioner's efforts at rehabilitation, his remorse and understanding of the crime and its effects of the victims, as well as any parole plans he may have.  Cal. Code Regs. Tit. 15, § 2402(b)-(d).  In other words, any parole decision depends on "an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board

members based on their experience with the difficult task of evaluating the advisability of parole release." Greenholtz v. Inmates of Nebraska Corr. & Penal Complex, 442 U.S. 1, 9-10 (1979).

Here, the mere fact of Petitioner's disciplinary violation, while constituting one of a myriad of factors that the BPH would consider in a parole hearing, is simply too attenuated to invoke the protections of due process, Sandin, 515 U.S. at 487, and can hardly be considered so pivotal to the question of granting parole that one could conclude that a sufficient nexus exists between it and the length of imprisonment such that a sufficient likelihood exists of it affecting the overall length of a Petitioner's confinement. Docken, 393 F.3d at 1030-31.

In his opposition to Respondent's motion to dismiss, Petitioner submits selected excerpts from his last parole suitability hearing held on June 5, 2013. (Doc. 16, App. G). Petitioner has not presented the entire transcript of that hearing, but has instead chosen to "cherry-pick" those pages he feels are most favorable to his argument. Nevertheless, the Court agrees with Respondent that nothing in those pages remotely suggests the kind of nexus required for the Court to conclude that the most recent disciplinary result impacted the BPH's decision in any significant way. To the contrary, the BPH notes that Petitioner has had at least nineteen prison disciplinary citations during his tenure in CDCR. (Doc. 16, App. G). The BPH also noted that, at one point, Petitioner became so agitated he told prison staff they could give him one hundred citations and he would not comply with staff's orders, and subsequently had to be physically restrained. (Id.). In summing up its reasons for denying parole suitability, the BPH found "that there were separate and independent factors that related to [Petitioner's] current dangerousness." (Id.). Those factors included Petitioner's "lack of credibility," i.e., that his attempts to justify some of his past crimes were "absurd." (Id.). The Board noted that Petitioner would, in the Boards' estimation, require seven more years of incarceration to deal with the problems the Board noted in its decision. (Id.). The BPH recommended Petitioner complete anger management training and substance abuse programming during that additional prison time. (Id.). Moreover, the BPH noted that it had been two years since the prison disciplinary finding upon which this petition is premised had occurred, and that Petitioner had had a "number of years of good conduct" since that event, such that the most recent prison disciplinary finding has "been very mitigated." (Id.). Given even the selective record presented by Petitioner, the Court can only conclude that Petitioner's

most recent disciplinary finding played only the most insignificant part in the Board's decision to deny parole.

To the extent Petitioner contends he has forfeited good-time credits as a result of the prison disciplinary hearing, Petitioner's status as an inmate serving an indeterminate life sentence combined with the fact that he is beyond his Minimum Eligible Parole Date ("MEPD") defeats any such a claim.

As a state prisoner serving an indeterminate life sentence, Petitioner's credit-earning is governed by state regulations. Section 2290(a) of Title 15 provides as follows:

> Life prisoners may earn post-conviction credit for each year spent in state prison. Post-conviction credit for time served prior to the hearing at which a parole date is established shall be considered at that parole consideration hearing. Thereafter, post-conviction credit for time served since the last hearing shall be considered at progressive hearings. In no case may post-conviction credit advance a release date earlier than the minimum eligible parole date. [5]

Put simply, once Petitioner has reached his MEPD, his credit-earning potential as an inmate serving an indeterminate life sentence has no bearing at all on the length of time he will actually remain in prison, since, at that point, such a determination is made solely by the BPH after conducting a suitability hearing.

Here, Petitioner is serving an indeterminate life term with the possibility of parole. (Doc. 13, Ex. 4, p. 5). Since the loss of the credits about which Petitioner complains can only be used under California regulations for adjusting the date of the MEDP, <u>which has already passed</u>, as evidenced by the fact that Petitioner has already had at least one parole suitability hearing, it is clear that any loss of such credits at this post-MEDP juncture can and will have no effect on Petitioner's ultimate release date. As discussed previously, only the BPH has the power to affect the length of Petitioner's sentence.

Petitioner has not established that granting the relief he requests in the instant petition would have any material impact on the length of his sentence, i.e., the date on which the BPH ultimately decides Petitioner is suitable for parole, if ever. Because of this, the Court concludes that <u>none</u> of Petitioner's complaints about the disciplinary hearing, if corrected, would <u>necessarily</u> shorten Petitioner's overall sentence. <u>Ramirez</u>, 334 F.3d at 859 (emphasis supplied). Thus, habeas

---

[5] Title 15 of the Code of California Regulations § 2000(b)(3) defines a "life prisoner" as one who, like Petitioner, is "serving a sentence of life with the possibility of parole."

14

jurisdiction is absent for and the petition should be dismissed.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the motion to dismiss be GRANTED and the habeas corpus petition be DISMISSED for Petitioner's failure to state a cognizable federal habeas claim.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **December 5, 2014**                  **/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE